**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-20495-BLOOM/Louis

ANTOINETTE HOLLEY (GAUNTLETT),

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**ORDER ON MOTION TO STRIKE/*DAUBERT* MOTION**

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant") Motion to Strike/*Daubert* Motion to Exclude Plaintiff's Expert Witness, Frank A. Fore, ECF No. [40] ("Motion"). Plaintiff Antoinette Holley (Gauntlett) ("Plaintiff") filed a Response, ECF No. [52] ("Response"), to which Defendant filed a Reply, ECF No. [57] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted in part and denied in part consistent with this Order.

**I.   BACKGROUND**

On February 3, 2020, Plaintiff initiated the instant action against Defendant for personal injuries she sustained while onboard the *Carnival Liberty*. *See* ECF No. [1]. According to the Complaint, Plaintiff was injured after she slipped and fell on a wet substance on the ship's lido deck "as a direct and proximate result of Defendant's failure to reasonably maintain the lido deck floor area[.]" *Id.* ¶ 10. The Complaint asserts a single count of maritime negligence against Defendant. *Id.* ¶ 11.

Plaintiff retained Frank Andrew Fore ("Mr. Fore") to conduct an engineering analysis of the area in question and to testify regarding the alleged dangerous conditions Defendant knew or should have known about, additional precautionary measures Defendant failed to take that would have prevented the alleged injury, and Defendant's noncompliance with industry standards and Defendant's own internal policies. ECF Nos. [52] at 2, [40-1] at 28-30. In the Motion, Defendant requests that the Court exclude Mr. Fore's testimony because he is not qualified, he did not employ any recognized or reliable methodologies in arriving at his opinions, and his opinions are not helpful to the trier of fact. *See generally* ECF No. [40].[1] Plaintiff argues that Mr. Fore is qualified, he employed appropriate methodologies, and his opinions are helpful to the trier of fact. *See generally* ECF No. [52].

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact,

---

[1] Defendant also includes within its Reply a separate "Motion to Strike Affidavit of Frank Andrew Fore, PE" ("Motion to Strike"). ECF No. [57] at 6. Defendant requests that the Court strike the Affidavit filed in support of Plaintiff's Response to Defendant's Motion for Summary Judgment and the instant Motion. *See id.* at 7. However, a party may not raise a new motion in its reply. *See Herring v. Sec'y, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005). As such, the Court declines consideration of the improper Motion to Strike.

through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive and a court may need to conduct alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing

*Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### III. DISCUSSION

Defendant seeks to preclude Mr. Fore from offering expert testimony at trial based upon the opinions in his report, ECF No. [40-1]. Defendant contends that Mr. Fore's opinions are inadmissible because Mr. Fore is not qualified, his opinions are not based on any reliable

methodology, and his opinions are not helpful. *See generally* ECF No. [40]. Plaintiff opposes the Motion by highlighting Mr. Fore's experience as an engineer and contends that his methodology is reliable. *See generally* ECF No. [52]. Mr. Fore's report states that he relied on the passenger injury statement, photographs, deposition transcripts, industry standards, Defendant's internal documents and training videos, and his site inspection. ECF No. [40-1] 9, 15-16. He sets forth sixteen opinions:

1. The tile walkway surface where Ms. Holley slipped was unreasonably slippery and dangerous when wet.
2. The close proximity of the Tivoli Pool and the exterior deck made it foreseeable that the tile walkway where Ms. Holley slipped would accumulate water from the pool and rainwater, causing the walkway to become wet and slippery.
3. The location of the tile walkway where Ms. Holley slipped, directly between the exterior and interior food and beverage areas, made it foreseeable that the walkway would accumulate food and beverage spills, causing the walkway to become wet and slippery.
4. Carnival knew or should have known of the unreasonable risk of injury created by having passengers transition from teak flooring, across the full length of highly slip resistant mat, and then onto a potentially wet or otherwise contaminated, non-slip resistant tile floor.
5. The location of the tile walkway where Ms. Holley slipped, directly next to a highly slip resistant mat, made it foreseeable that the tile walkway would likely cause slips, especially when the tile was wet or otherwise contaminated, causing passengers to fall and possibly become injured.
6. Carnival's failure to provide a walkway surface that would be slip resistant when wet, or otherwise contaminated, was unreasonable, especially considering its proximity to a pool and exterior deck and the interior restaurant area.
7. Carnival's failures to replace the dangerously slippery floor, dry it, over it or to maintain effective warnings to alert passenger to foreseeable wet and slippery conditions, violated accepted standards for safe walkways and created the dangerous conditions that caused Ms. Holley to slip
8. The two-tone color walkway tiles on the tile floor surface made it more difficult for Ms. Holley to see any walkway contamination and slip hazard.
9. Carnival violated their own safety standard by not ensuring the subject mat was at least three meters (118.11") long at the subject location where there was access from the weather deck to an interior space.
10. Carnival failed to post any warning signs in the area to alert passenger to the slip hazard or to encourage passengers to watch their step.
11. Carnival's actions violated the applicable standard of reasonable care for providing and maintaining safe walkways and created the dangerous conditions that caused Ms. Holley to fall and be injured.

6

Case 1:20-cv-20495-BB Document 74 Entered on FLSD Docket 11/18/2021 Page 7 of 20

Case No. 1:20-cv-20495-BLOOM/Louis

12. There was sufficient public and proprietary information available to Carnival prior to the incident to notify Carnival of the slip and fall hazards in question.
13. Prior to the subject incident, the International Maritime Organization (IMO), the U.S. Access Board, the American Society for testing and Materials (ASTM), and Carnival itself published safety standards and guidelines which apply to walkways and signage in the marine environment.
14. Carnival knew or should have known of the unreasonable risk of injury created by:
    - Their choice to install non-slip resistant tile at the end of a highly slip resistant floor mat, at the entrance from an exterior deck and pool
    - Their choice of two-tone color tile for the interior floor, rendering contamination inconspicuous.
    - Their failure to warn passenger of the contamination and slip hazards.
15. Prior to the subject incident, it was technically and economically feasible for Carnival to have mitigated the slip and fall hazards in question, as previously detailed in this report.
16. The reasonable probability is that Ms. Holley would not have fallen or been injured had one or more of the following elements been properly designed or corrected:
    - A slip resistant floor installed directly in the path of a primary means of egress from the exterior deck and pool,
    - A slip resistant floor installed directly in the path between the interior and exterior dining areas,
    - No abrupt change in the floor slip resistance was created by different floor material,
    - The floor tile had been a color that made contamination and spills more conspicuous rather than less conspicuous to properly give passengers a chance to see the hazard,
    - Or had Carnival forewarned passengers, either by signage or crew, of the contamination and slip hazard

*Id.* at 28-30.

### A. Qualifications

The Court first addresses Mr. Fore's qualifications. Defendant challenges Mr. Fore's qualifications by arguing that Mr. Fore is not a naval architect. *See* ECF Nos. [40] at 12, [57] at 2-3. Defendant's argument rests on the contention that, as a land-based engineer, Mr. Fore does not have any expertise on uniquely maritime issues. *See id.* Plaintiff relies on *Peck v. Carnival Corp.*, No. 16-20214-CIV, 2017 WL 7726728, at *3 (S.D. Fla. Jul. 13, 2017), and contends that because Mr. Fore is a professional engineer, certified building contractor, certified building inspector, and

board-certified forensic engineer, he has the expertise to give his opinion on maritime accidents. ECF No. [52] at 4; *see also* ECF No. [40-1] at 5.

As noted above, the Eleventh Circuit has determined that an expert may be qualified "by knowledge, skill, experience, training, or education." *J.G.*, 2013 WL 752697, at *3 (citing *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129; Fed. R. Evid. 702). Furthermore, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz*, 253 F.3d at 665 (11th Cir. 2001)). In this case, Mr. Fore is qualified because Mr. Fore is a professional engineer and certified tribometrist offering his opinion on precautionary measures that would have prevented the alleged injury and Defendant's noncompliance with industry standards and internal policies. *See* ECF No. [40-1] at 5. As a professional engineer and tribometrist, Mr. Fore has expertise in measuring slip resistance and reviewing safety standards. *See id.* He has received training and has practical experience in applying the disciplines of engineering, human factors, ergonomics, epidemiology, and biomechanics to the assessment of real-world mishaps involving humans. *See id.* The Court also notes that Mr. Fore is a forensic accident investigator who has analyzed numerous slips and falls on cruise ships and therefore has the necessary experience to opine on maritime accidents. *See id.* As such, the Court determines that Mr. Fore is qualified to give his expert opinions.

### B. Reliable Methodology

The Court next addresses Mr. Fore's methodology. Defendant raises two general objections to Mr. Fore's methodology. First, Defendant argues that many of Mr. Fore's opinions do not rely on scientific methods. *See* ECF No. [40] at 12-16. Second, Defendant argues that several of Mr. Fore's opinions improperly rely on non-binding industry standards. *See id.* at 16-20. The Court addresses each argument in turn.

### a. Reliance on "Non-Scientific" Methodology

Defendant argues that Mr. Fore did not use a scientific methodology in forming his opinions that (1) the liquid in question was camouflaged and not open and obvious, ECF No. [40] at 12; (2) the area in question is a high-traffic area and subject to spills, *id.* at 13; (3) a larger floor mat could have prevented the incident, *id.* at 15; (4) a warning sign could have prevented the incident, *id.* at 15-16; and (5) the two-tone color walkway tiles on the tile floor made it more difficult for Plaintiff to see the slip hazard, ECF No. [57] at 4-5. Plaintiff responds that Mr. Fore's report and deposition set forth sufficient methodology for each challenged opinion. *See* ECF No. [52] at 6.[3]

As noted above, in determining whether an expert used reliable methods, the trial judge typically examines "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier*, 387 F.3d at 1261-62 (citing *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341). Those four factors above are illustrative and not exhaustive. *See id.* at 1262. In *Higgs v. Costa Crociere S.P.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *6 (S.D. Fla. Jan. 12, 2016), the court held that experts giving opinions do not always have to give "detailed measurements or experiments" depending on the type of analysis required to form an opinion on the matter.

In this case, Mr. Fore's report states that he conducted a site inspection of the vessel and reviewed photographs of the scene, the passenger injury statement, deposition transcripts, industry standards, and Defendant's internal documents. *See* ECF No. [40-1] at 9, 17. Similar to the

---

[3] Defendant does not indicate which of Mr. Fore's numbered conclusions it challenges for using non-scientific methodology. To the extent that the Court can discern whether the challenged opinions have corresponding numbered conclusions, the Court notes them below.

9

opinions Defendant challenges here, the court in *Higgs* found that an expert opining on conformity to industry safety standards could base his opinion on a "personal inspection and pictures of the dining area where the incident occurred, a review of relevant discovery documents, and his extensive experience . . ." *See* 2016 WL 4370012, at *6; *cf. Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1123 (S.D. Fla. 2014) (finding that the failure to visit the scene, review photographs, review written discovery responses, and interview witnesses are grounds for excluding the expert's opinion). As such, in this case, detailed measurements and experiments are not necessary for all of Mr. Fore's opinions, and Mr. Fore can rely on the passenger injury statement, photographs, deposition transcripts, industry standards, Defendant's internal documents, and his site inspection as part of his methodology for reaching some of his conclusions. ECF No. [40-1] 9, 17.

Determining whether Mr. Fore's methodology is sufficiently reliable requires an analysis of each of the opinions that Defendant challenges for using non-scientific methodology. Therefore, the Court now turns to each of the opinions that Defendant challenges on the grounds of non-scientific methodology. First, although Defendant argues that Mr. Fore relies on non-scientific methods to arrive at his opinion that the liquid was camouflaged, Mr. Fore's report describes how, during his site inspection, he conducted "wet slip testing" of the floor in question and he tested whether the liquid appeared camouflaged. ECF No. [40-1] at 23-24. Mr. Fore's report includes a photograph from the wet slip testing and appropriate remediation. *See id.* Mr. Fore also explained at his deposition how the wet area appeared camouflaged due to darker colored tiles. *See* ECF No. [40-2] at 166. The Court considers such testing and reasoning to be sufficiently reliable.

Second, Defendant argues that Mr. Fore's opinion that the area in question is high-traffic and subject to spills is not based on reliable methodology. ECF No. [40] at 13. According to

10

Plaintiff's Response and Mr. Fore's deposition, Mr. Fore's opinion relies on Defendant's training videos regarding precautions that need to be taken at the area in question due to it being a high-traffic area. ECF Nos. [52] at 7, [40-2] at 106-07; *see also* ECF No. [40-1] at 16. Additionally, in Mr. Fore's report, Mr. Fore discusses his site inspection during which he observed indoor and outdoor food and beverage stations and the dining area's seating arrangements. *See* ECF No. [40-1] at 17-18. Mr. Fore explains how the seating arrangements, seating capacity, and the layout of the food and beverage stations require passengers to traverse the area in question after getting their food and beverage, thereby making the area prone to spills. *See* ECF No. [40-1] at 17-18, 25. In *Higgs*, 2016 WL 4370012, at *6, the court found that an expert properly relied on his personal inspection and pictures of the dining area, a review of relevant discovery documents, and his extensive experience to form an opinion on the defendant's conformity to industry safety standards. Similarly, in this case, considering Mr. Fore's experience with cruise ship accidents, Mr. Fore properly relied on his review of the training videos and his personal inspection of the dining area to opine on the conditions of the area in question.

Third, Defendant argues that Mr. Fore's opinion that a larger floor mat could have prevented the accident is based on non-scientific methods (Conclusion 9). ECF No. [40] at 15. Mr. Fore's report states that he analyzed photographs and estimated that the length of the mat at the time of the incident extended only 58 inches into the interior of the restaurant. *See* ECF No. [40-1] at 19. He also conducted a site inspection and determined that the replacement mat only extended 113.75 inches into the restaurant. *See id*. Based on the measurements, Mr. Fore determined that both floor mats did not meet Defendant's three meter minimum standard for floor mats. *See id.* Mr. Fore further explained at his deposition that a longer mat would have allowed more time and distance for passengers to shed water. ECF No. [40-2] at 198-99. Given Mr. Fore's

experience measuring slip resistance and studying falls, such methodology and reasoning are reliable methods, and additional measurements or scientific experiments were not required for this particular opinion. *See Higgs*, 2016 WL 4370012, at *6.

Fourth, Defendant argues that Mr. Fore's opinion that a warning sign could have prevented the incident is not based on scientific evidence (Conclusion 10). *See* ECF No. [40] at 15-16. Plaintiff argues that Mr. Fore's opinion is appropriately based on a review of Plaintiff's testimony, a site inspection, and GAZE studies. *See* ECF No. [52] at 9; *see also* ECF No. [40-2] at 123, 126. At Mr. Fore's deposition, Mr. Fore explained that GAZE studies suggest that people tend to look ten to fifteen feet in front of them. *See* ECF No. [40-2] at 126. However, Mr. Fore did not provide any meaningful information about the scientific validity of GAZE studies in his report or at his deposition. Without additional information about GAZE studies, an application of GAZE studies cannot be considered sufficiently reliable methodology.[4] Moreover, even if GAZE studies were based on valid scientific methods, Mr. Fore admitted at his deposition that he has no evidence as to where Plaintiff was looking when she fell, and that it was "entirely possible" that Plaintiff was looking elsewhere. ECF No. [40-2] at 126. As such, Mr. Fore has no reliable factual basis to opine that an appropriately placed warning sign would have prevented the fall. Also, although Plaintiff argues that Mr. Fore relied on his site inspection and Plaintiff's testimony, Mr. Fore's report does not describe how the site inspection and Plaintiff's testimony informed his opinion on the matter. *See* ECF No. [40-1] at 24. Accordingly, Mr. Fore's opinion on whether warning signs could have prevented the incident is inadmissible.

---

[4] In the Response, Plaintiff mentions the "Dixon article – cited in his report" as a GAZE study. ECF No. [52] at 8. The list of references cited in Mr. Fore's report do not include the Dixon article. *See* ECF No. [40-1] at 31-34. Even if the Dixon article is included elsewhere in Mr. Fore's report, the study does not advance Plaintiff's argument for the reasons stated above. In addition, the Court does not consider Mr. Fore's Affidavit, ECF No. [49-1], because it is not a part of his timely expert witness disclosures required by Fed. R. Civ. P. 26(a)(2)(B) or part of his deposition. *See also* Fed. R. Civ. P. 26(a)(2)(C).

Fifth, Defendant argues that Mr. Fore's opinion that the two-tone color walkway tiles on the tile floor made it more difficult for Plaintiff to see any walkway contamination or slip hazard is not based on scientific evidence (Conclusion 8). ECF No. [57] at 4-5. According to Plaintiff's Response and Mr. Fore's deposition, the opinion is based on GAZE studies and the general speed at which people tend to walk. *See* ECF No. [52] at 8-9; ECF No. [40-2] at 167-68. However, as noted above, GAZE studies are not sufficiently reliable, especially since Mr. Fore has no evidence as to where Plaintiff was looking at the time of the incident. ECF No. [40-2] at 126. Mr. Fore also admitted at his deposition that he did not know the specific speed at which Plaintiff was walking. ECF No. [40-2] at 168. In other words, Mr. Fore speculates as to where Plaintiff was looking and how fast Plaintiff was walking to form his opinion. As such, Mr. Fore's opinion on whether the two-tone color walkway tiles made it more difficult for Plaintiff to see any walkway contamination and slip hazard is inadmissible.[5]

### b. Reliance on Non-Binding Industry Standards

Defendant also contends that Mr. Fore's methodology, specifically his use of non-binding industry standards, is unreliable, rendering Mr. Fore's conclusions numbered 2, 3, 6, 9, 11, 12, 13, 14, and 15 inadmissible. ECF No. [57] at 3. Defendant relies on several cases, including *Amy v. Carnival Corp.*, 360 F. Supp. 3d 1345, 1356 (S.D. Fla. 2018), and *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 868 (11th Cir. 2018), to argue that non-binding standards are not relevant to the

---

[5] It should be noted that one of Mr. Fore's numbered conclusions is that Defendant knew or should have known of the unreasonable risk of injury created by Defendant's choice of two-tone tiles which rendered the "contamination inconspicuous" (Conclusion 14). *See* ECF No. [40-1] at 29. As Mr. Fore stated at his deposition, his opinion on whether the contamination is generally inconspicuous is independent of whether the Plaintiff saw the contamination. ECF No. [40-2] at 166. In other words, Conclusion 14 does not pertain to why Plaintiff fell but whether the tiles made the contamination look inconspicuous. At Mr. Fore's deposition, he further discussed his site inspection where he tested whether the two-tone tiles made spills look inconspicuous. *See id.* at 166-67. As such, Mr. Fore's opinion that Defendant knew or should have known of the unreasonable risk of injury created by Defendant's choice of two-tone tiles is not speculative.

13

notice inquiry and should not be a part of Mr. Fore's methodology. *See* ECF Nos. [40] at 17, [57] at 3. Based on *Amy*, Defendant argues that the "Southern District has shifted its thinking and found that these non-mandatory rules do not establish constructive notice." ECF No. [40] at 17. Plaintiff does not respond to Defendant's contention about the supposed shift in jurisprudence. *See generally* ECF No. [52].

Nonetheless, the Court notes several cases, some more recent than the cases Defendant relies on, have long established that industry standards may put a defendant on notice of dangerous conditions. *See, e.g.*, *Andersen v. Royal Caribbean Cruises Ltd.*, No. 19-CV-24639, 2021 WL 2414151, at *9 (S.D. Fla. Jun. 14, 2021) (citing *Bunch v. Carnival Corp.*, 825 F. App'x 713, 715-16 (11th Cir. 2020); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015)); *Francis v. MSC Cruises, S.A.*, No. 18-61463-CIV, 2021 WL 2661149, at *6 (S.D. Fla. Jun. 29, 2021) (citing *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x. 786, 795 (11th Cir. 2017); *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x. 508, 512 (11th Cir. 2019)); *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180-81 (5th Cir. 1975) ("Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence.").

Most recently, this Court, relying on two Eleventh Circuit cases, held that "evidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of notice, can be used to establish constructive notice." *Andersen*, 2021 WL 2414151, at *9 (citing *Bunch*, 825 F. App'x at 715-16; *Sorrels*, 796 F.3d at 1282). In *Andersen*, the Court denied a motion for summary judgment after determining that one of the experts properly relied on the fact that the tile flooring in question did not comport with industry safety standards and that another expert properly relied on the fact the defendant's a/c maintenance protocol

violated industry standards. *See id.* The Court held that a reasonable factfinder could conclude that the defendant had constructive notice of a risk-creating condition based on expert opinions about the defendant's noncompliance with industry standards. *See id.* In other words, the Court recognized that industry standards could form the basis for expert opinions. Similarly, in this case, Mr. Fore may rely on industry standards to form an opinion about Defendant's constructive notice of dangerous conditions.

Moreover, Defendant's reliance on the Eleventh Circuit case *Krug*, 745 F. App'x at 868, is unavailing. ECF No. [57] at 3. The Eleventh Circuit *Krug* did not hold that non-binding industry standards are not relevant to the notice inquiry. *See* 745 F. App'x at 868. Instead, the Eleventh Circuit found that the district court properly afforded minimal weight to the plaintiff's expert opinions in considering a motion for summary judgment because the experts failed to identify the industry standard that the defendant had violated. *See id.* It was the failure to identify industry standards, not the reliance on industry standards, that resulted in the district court properly affording minimal weight to the expert opinions. In sum, the Eleventh Circuit did not determine that industry standards are not relevant to the notice inquiry, but that a failure to adequately describe the industry standards relied upon by an expert witness undermines the credibility of the expert witness. In this case, Mr. Fore adequately described the industry standards he relied upon. ECF No. [40-1] at 31-32.

Defendant's reliance on *Amy* as the "most recent on-point decision" is also unpersuasive. ECF No. [40] at 17. In *Amy*, the court acknowledged that other courts in the district had found that voluntary non-binding standards may be used as evidence of constructive notice, but the court determined that industry standards did not provide constructive notice in that particular case. 360 F. Supp. 3d at 1356. However, it is important to note that the Eleventh Circuit reversed and

remanded the decision. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1310 (11th Cir. 2020). The Eleventh Circuit did so in part because "a reasonable jury could understand [a witness'] testimony to show that [the defendant] knew of the dangers of climbable railings, as well as the 4-inch safety standard." *See id.* The defendant's knowledge of the 4-inch safety standard, in turn, could help establish that the defendant had constructive notice of the risk-creating condition. *See id.*

As Plaintiff argues, Mr. Fore did not rely solely on non-binding industry standards in reaching the conclusions numbered 2, 3, 6, 9, 11, 12, 13, 14, and 15. *See* ECF No. [52] at 7-11. While Mr. Fore did not rely on prior incident evidence as Defendant rightly argues, ECF No. [40] at 18, Mr. Fore did rely on Defendant's own published safety standards, internal policies, internal documents, and training videos to form his conclusions. *See* ECF Nos. [40-1] at 15-16, 19, 27-28, [40-2] at 101, 104, *see also* ECF No. [52] at 7-11. This Court recently held that a defendant's "cruise safety practices when marking and warning of hazardous spills and Defendant's spill policies are . . . helpful to the jury's understanding of the applicable standard of care." *Maxwell v. Carnival Corp.*, No. 19-CV-23054, 2021 WL 1535398, at *3 (S.D. Fla. Apr. 19, 2021). Similarly, in *Webb v. Carnival Corporation*, 321 F.R.D. 420, 426 (S.D. Fla. Jul. 6, 2017), the court found that an expert's proffered testimony on cruise safety practices and defendant's policies was admissible in establishing the standard of care. In accordance with recent cases that indicate internal practices and policies are relevant to the appropriate standard of care, Mr. Fore's review of industry standards and Defendant's internal policies is a reliable method to form his expert opinion about the appropriate standard of care.

### C. Helpfulness

#### a. Video Review

The Court now addresses whether Mr. Fore's opinions are helpful. Defendant argues that Mr. Fore's discussion of a video should be inadmissible because it is not helpful. ECF No. [40] at 14. Defendant argues that Mr. Fore did not conduct any analysis of the video and will likely "tell the jury what to conclude from the video" after having merely watched the video. *Id*. Defendant cites *Kirksey v. Schindler Elevator Corp*., No. CV 15-0115-WS-N, 2016 WL 5239874, at *8 (S.D. Ala. Sept. 21, 2016), for its contention that the trier of fact can and should review the video themselves and that Mr. Fore's opinion, based on the video that the area in question is subject to high traffic and prone to spills, is not helpful. ECF No. [40] at 14-15.

Plaintiff argues that Mr. Fore used the video to form the factual basis for his opinion that the area in question is prone to spills and that his opinion about the area in question is helpful. However, Plaintiff does not specifically address Defendant's contention that Mr. Fore's testimony regarding the video itself would not be helpful. ECF No. [52] at 7. Plaintiff, for instance, does not explain if and how Mr. Fore's expertise and experience gave him additional insight into what the video depicts. *See id*. In *Jackson v. Catanzariti*, No. 6:12-CV-113, 2019 WL 2098991, at *9 (S.D. Ga. May 14, 2019), the court found that an expert could not opine on what the video footage showed without offering any "expert gloss or explanation." Similarly, because Mr. Fore did not explain how his experience and expertise informed his analysis of the video, Defendant is persuasive to the extent that Mr. Fore's overview of the video would not be helpful.

However, Mr. Fore's opinion that the area in question is subject to high traffic and prone to spills is helpful because Mr. Fore relied, not only on the video, but also on his analysis of how the vessel's seating arrangements, seating capacity, and the layout of the food and beverage

stations required passengers to traverse the area in question with food and beverages, thus making the area prone to spills. *See* ECF No. [40-1] at 17-18, 25. The Court considers such analysis to be beyond the understanding of the average lay person. As such, Mr. Fore may offer the opinion he formed partly relying on the video, but Mr. Fore may not merely describe what the training video shows.

### b. Legal Conclusions

Defendant argues that Mr. Fore's opinions indicating that Defendant had actual or constructive notice of the dangerous condition or was otherwise at fault are not helpful and impermissible legal conclusions. ECF No. [40] at 10-11. It is well-established that experts may not offer legal conclusions. *See, e.g.*, *Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-CV-60268, 2019 WL 8810306, at *3 (S.D. Fla. Oct. 30, 2019) ("[the expert] may not offer testimony with respect to Defendant's notice, either actual or constructive") (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)); *O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-21225-CIV, 2018 WL 2970728, at *4 (S.D. Fla. Jun. 13, 2018) ("Mr. Gras' generic opinions are intertwined with legal conclusions that Defendant was negligent and that the vessel's personnel caused Plaintiff's injuries. Therefore, we conclude that Mr. Gras may not testify that Defendant was at fault or that Defendant breached its duty of care."); *Higgs*, 2016 WL 4370012, at *7 (concluding that Mr. Jaques' opinions that a defendant "is at fault" or that its crew is "careless," and testimony concerning the applicable legal standard, i.e., that a defendant is "legally required to exercise at least 'reasonable care the safety' of the passengers in question," all constitute unhelpful and impermissible legal conclusions that should be stricken); *Feldman v. Target Corp.*, No. 3:19-CV-419-MMH-PDB, 2021 WL 1172794, at *3 (M.D. Fla. Mar. 29, 2021), *adhered to on denial of reconsideration*, No. 3:19-CV-419-MMH-PDB, 2021 WL 1813443 (M.D. Fla. May

6, 2021) (precluding an expert's opinion that conditions were "unreasonably dangerous" because it was a legal conclusion that defendant acted negligently). Plaintiff responds that Mr. Fore's opinions are helpful because they are beyond the knowledge of a lay jury, but Plaintiff fails to address Defendant's contention that Mr. Fore's opinions are impermissible legal conclusions. ECF No. [52] at 11-12.

The Court agrees with Defendant that opining on constructive or actual notice and assigning fault are legal conclusions that invade the province of the jury and are not helpful. Accordingly, Mr. Fore is precluded from testifying that Defendant "knew or should have known" of the risk, that there was sufficient information to "notify" Defendant, or that various circumstances made dangerous conditions "foreseeable." ECF No. [40-1] at 28-29; *see Zarfaty*, 2019 WL 8810306, at *3. Mr. Fore is also precluded from testifying that Defendant "violated the *applicable* standard of reasonable care[,]" ECF No. [40-1] at 29 (emphasis added), but Mr. Fore may opine as to whether Defendant violated Defendant's own safety standards and industry standards, which are not legal conclusions and beyond the expertise of an average lay juror, *see Higgs*, 2016 WL 4370012, at *7. Mr. Fore's testimony that certain conditions posed an "unreasonable" risk, ECF No. [40-1] at 28-29, is inadmissible as a legal conclusion, *see Feldman*, 2021 WL 1172794, at *3. Similarly, Mr. Fore's opinion that it was "technically and economically feasible" to mitigate the risk, ECF No. [40-1] at 29, is also inadmissible as a legal conclusion. *See Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) ("If testimony track[s] the language of the applicable statute or uses a term that has a specialized legal meaning that is more precise than the lay understanding of the term, the testimony is an impermissible legal conclusion.") (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212

(D.C. Cir. 1997)) (internal quotations omitted).[6] Mr. Fore is permitted to offer his underlying opinions without framing them as legal conclusions or using legal terms.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [40]**, is **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 17, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[6] Defendant also challenges Mr. Fore's use of the phrase "open and obvious." ECF No. [40] at 12. Defendant refers to page 178 of Mr. Fore's deposition in which Mr. Fore allegedly used the phrase. *See id.* However, Mr. Fore does not use the phrase in his deposition and only uses the word "camouflaged." *See* ECF No. [40-2] at 178. Furthermore, Mr. Fore does not use the phrase "open and obvious" in his conclusions. *See* ECF No. [40-1] at 29-31. To the extent that Mr. Fore intends to use the phrase, the phrase is inadmissible as a legal conclusion. *See Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015). However, the use of the word "camouflaged" is admissible because it is not a legal conclusion.